# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ROBIN E. BELL,**

    **Plaintiff,**

**v.**              **No. CIV-13-0433 LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

    **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

   **THIS MATTER** is before the Court on ***Plaintiff's Motion to Reverse or Remand Administrative Agency Decision*** *(Doc. 18)*, and memorandum in support [*Doc. 19*], both filed November 11, 2013 (hereinafter, collectively, "motion").   In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case.   *See* [*Docs. 5 and 9*].   On January 14, 2014, Defendant filed a response to the motion [*Doc. 20*], and, on January 27, 2014, Plaintiff filed a reply [*Doc. 21*].   The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law.   Additionally, the Court has meticulously reviewed and considered the entire administrative record.   [*Doc. 11*].   For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

# I.   Procedural History

On December 16, 2009, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that she became disabled on July 7, 2009.   [*Doc. 11-7* at 2-5 and 6-9, respectively].   Plaintiff stated that she became disabled due to: back problems, heart condition, hypertension, and liver disorder. [*Doc. 11-8* at 17].   The applications were denied at the initial level on January 22, 2010 (*Doc. 11-5* at 2-5), and at the reconsideration level on June 2, 2010 (*id.* at 9-11 and 12-15). Pursuant to Plaintiff's request (*id.* at 16-17), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on May 26, 2011.   [*Doc. 11-3* at 29-46].   At the hearing, Plaintiff was present, was represented by counsel and testified (*id.* at 31, 34-43, and 45-46), and Vocational Expert (hereinafter "VE"), Pamela Bowman, was also present and testified (*id.* at 31 and 43-45).

On July 15, 2011, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.   [*Doc. 11-3* at 16-28].   Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 10-11), and, on March 12, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 3-9), which made the ALJ's decision the final decision of the Commissioner.   On May 8, 2013, Plaintiff filed her complaint in this case. [*Doc. 1*].

# II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence

supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).   While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."   *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."   *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 7, 1962.  [*Doc. 11-7* at 2].  Plaintiff has held the following jobs: cashier, nurse, police officer, and salad preparer.  [*Doc. 11-8* at 19].  Plaintiff alleges that she is unable to work because of back problems, heart condition, hypertension and

liver disorder. *Id.* at 17. Plaintiff's medical records include: a Physical Residual Functional Capacity Assessment by Eileen M. Brady, M.D., dated January 11, 2010 (*Doc. 11-11* at 65-72) and a Medical Opinion Re: Ability to Do Work-Related Activities by Bradford L. Cambron, M.D., dated May 12, 2011 (*Doc. 11-16* at 27-29). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of July 7, 2009. [*Doc. 11-3* at 18]. At step two, the ALJ found that Plaintiff has the following severe medically determinable impairments: "hypertension, heart palpitations, and degenerative joint disease of lumbar spine." *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 19.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work, but "is additionally limited in that she must alternate between sitting and standing every 30 minutes; may occasionally climb, balance, and stoop; may not kneel, crouch, or crawl; and must avoid hazards." *Id.* In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." *Id.* at 21. The ALJ noted that, although Plaintiff has received various forms of treatment for her allegedly disabling symptoms, "the record also reveals that the treatment has been generally

successful in controlling those symptoms," and that Plaintiff's back pain is often unreported in her assessments and at times is noted as "off/on" and "better."   *Id.*   The ALJ further noted that the treatment records do not contain any opinions indicating that Plaintiff is disabled or has limitations greater than those in the ALJ's RFC, and "the only limitations were given in a form completed in preparation for her appeal by Dr. Cambron and certain aspects of the doctor's opinion are in fact consistent with the [ALJ's RFC]."   *Id.*   At step four, the ALJ found that Plaintiff was unable to perform any past relevant work, so the ALJ proceeded to the fifth step.   *Id.* at 22.

At the fifth and final step, the ALJ noted that Plaintiff was born on November 7, 1962, so she was 46 years old at the time of her alleged disability onset date, which is defined as a younger individual between the ages of 18-49.   *Id.*   The ALJ noted that Plaintiff has at least a high school education, and is able to communicate in English.   *Id.*   The ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."   *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).   The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. [*Doc. 11-3* at 22].   The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]" (*id.*), and the VE testified that such an individual would be able to perform the following requirements of representative occupations: cleaner polisher and shipping weigher (*id.* at 22-23) both light and unskilled jobs.   The ALJ stated that "the [VE's] testimony is consistent with the information

contained in the Dictionary of Occupational Titles" and that "[t]he [VE] provided that the Dictionary of Occupational Titles does not specifically address jobs with a sit[-]stand option." *Id.* at 23.   The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to work that exists in significant numbers in the national economy." *Id.*   The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.   *Id.*

## V.   Analysis

Plaintiff makes the following arguments in her motion to reverse or remand: (1) the ALJ's RFC assessment is in error because the ALJ failed to properly evaluate Plaintiff's heart impairments, failed to properly evaluate Dr. Cambron's opinions, improperly relied on the opinions of a state agency reviewing physician, and disregarded various requirements of SSR 96-8p (*Doc. 19* at 12-16); (2) the ALJ's hypothetical to the VE was improper based on the ALJ's flawed RFC, and the ALJ failed to consider VE testimony that was adverse to her position (*id.* at 16-17); and (3) the ALJ's credibility assessment is unsupported by substantial evidence and is legally erroneous (*id.* at 17-20).   Plaintiff states that, while her initial claim was pending before the Appeals Council, she filed a second application for DIB benefits, which was approved by the Commissioner with an assessed onset date of August 1, 2012.  *See id.* at 20 and *Doc. 19-1.* Therefore, Plaintiff states that the issue before the Court is limited to whether she was disabled beginning on July 7, 2009 (Plaintiff's alleged onset date in her applications currently at issue) to July 31, 2012 (the day before she was found to be disabled in her subsequent application).  *Id.* at 20-21

In response, Defendant argues that substantial evidence supports the ALJ's RFC determination, the ALJ's step-five finding is not in error, and the ALJ conducted a proper evaluation of Plaintiff's credibility.   [*Doc. 20* at 3-13].   Defendant states that, should the Court find that remand is warranted, Defendant does not oppose limiting the time period under consideration to July 7, 2009 through July 31, 2012 based upon the Commissioner's previous determination that Plaintiff became disabled as of August 1, 2012.   *Id.* at 13-14.

### A.   The ALJ's RFC Assessment

### 1.   *Consideration of Plaintiff's Heart Impairments*

Plaintiff first contends that the ALJ's RFC determination is inadequate because it does not take into account the effects of Plaintiff's heart impairments.   [*Doc. 19* at 12-13].   Plaintiff states that she has palpitations, chest pain, and hypertension, and that she was diagnosed with dyspnea[1] during exertion.   *Id.* at 12 (citing *Doc. 11-17* at 4, 8, 12 and 16).   Plaintiff contends that the ALJ trivialized or disregarded Plaintiff's reports of: frequent, stabbing chest pain; daily palpitations; shortness of breath; dizziness; lightheadedness; fatigue; nausea; heart flutter; abnormal ECGs; a myocardial perfusion in May 2008; moderate ischemia consistent with stenosis; and emergency hospitalizations in March and October 2010.   [*Doc. 19* at 12] (citing *Doc. 11-10* at 14-20, *Doc. 11-11* at 51, and *Doc. 11-17* at 2-36).   Plaintiff also notes that she had an aborted stress ECG in March 2010 showing poor exercise capacity and marked hypertensive response with exercise. [*Doc. 19* at 12] (citing *Doc. 11-17* at 20-21 and 33-34).

---

[1] "Exertional dyspnea" is defined as: "excessive shortness of breath after exercise."   Stedman's Medical Dictionary (27th ed., Lippincott Williams & Wilkins 2000) at 556.

In response, Defendant contends that the ALJ properly considered the effects of Plaintiff's heart condition.   [*Doc. 20* at 3-5].   Defendant states that Plaintiff' stress test with Dr. Downey on March 5, 2010 was negative (*id.*, citing *Doc. 11-17* at 21), and that Dr. Downey noted that Plaintiff's work up from her emergency room treatment was unremarkable outside of hypertension (*Doc. 20* at 4, citing *Doc. 11-17* at 19).   Defendant further states that "Dr. Downey's initial examination showed Plaintiff's blood pressure reading was 172/92, and that her heart had a regular rhythm with no murmurs, gallops, clicks, or rubs."   [*Doc. 20* at 4] (citing *Doc. 11-17* at 20). Defendant states that future visits with Dr. Downey indicated that Plaintiff's heart symptoms continued to improve with better blood pressure control.   [*Doc. 20* at 4-5].   Defendant, therefore, contends that the ALJ did not err in failing to find persistent dyspnea with exertion, and that the ALJ properly evaluated Plaintiff's heart condition.   *Id.* at 5.

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").   The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.   SSR 96-8p at *5.   "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.,

daily activities, observations).”   *Id.* at *7.   The ALJ “must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved,” and the RFC assessment must always consider and address medical source opinions.   *Id.*

Here, the ALJ found that Plaintiff has the RFC to perform light work, but “is additionally limited in that she must alternate between sitting and standing every 30 minutes; may occasionally climb, balance, and stoop; may not kneel, crouch, or crawl; and must avoid hazards.”   [*Doc. 11-3* at 19].   The ALJ’s only mention of the evidence in the record regarding Plaintiff’s heart condition is that medical records from the “New Mexico Heart Institute evidence [Plaintiff’s] continuing treatment for hypertension, chest pain, and [supraventricular tachycardia],” and that “[c]laimant’s event recorder study consistently did not show any significant arrhythmias despite her having symptoms.”   *Id.* at 21 (citing *Doc. 11-17*).   The ALJ’s RFC determination, however, includes no limitations regarding Plaintiff’s heart condition, and the ALJ does not discuss why she rejected the evidence in the record regarding this condition.   Specifically, the ALJ fails to discuss Plaintiff’s diagnosis of dyspnea during exertion (*Doc. 11-17* at 4, 8, 12 and 16), or her abnormal ECGs, myocardial perfusion in May 2008, moderate ischemia consistent with stenosis, and emergency hospitalizations in March and October 2010 (*Doc. 11-10* at 14-20, *Doc. 11-11* at 51, and *Doc. 11-17* at 2-36).   The ALJ also makes no mention of Plaintiff’s aborted stress ECG in March 2010 showing poor exercise capacity and marked hypertensive response with exercise. [*Doc. 11-17* at 20-21 and 33-34].   Defendant’s attempt to supply the ALJ’s reasoning for her findings is an impermissible *post hoc* rationalization.   See *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an

ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).   The Court, therefore, finds that the ALJ's RFC determination is not in compliance with SSR 96-8p because the ALJ did not explain how the inconsistencies in the evidence regarding Plaintiff's heart condition were considered and resolved.   *See* SSR 96-8p at *7.   Accordingly, the Court will remand this case to the Commissioner for further evaluation of Plaintiff's heart condition, and, on remand, the ALJ is directed to reevaluate Plaintiff's physical impairments in accordance with SSR 96-8p and other applicable law.

### 2.   *Dr. Cambron's Opinion*

Next, Plaintiff contends that the ALJ erred by failing to properly consider Dr. Cambron's April 15 and May 13, 2011 opinions that the combination of Plaintiff's palpitations and musculoskeletal pain made employment "somewhat impractical" (*Doc. 19* at 13, citing *Doc. 11-16* at 23 and 25), and his May 12, 2011 Medical Opinion Re: Ability to Do Work-Related Activities (*Doc. 19* at 13, citing *Doc. 11-16* at 27-29).   Defendant responds that the ALJ properly considered Dr. Cambron's opinions, contending that his opinions regarding Plaintiff's ability to work are not medical opinions, that portions of his May 12, 2011 assessment are consistent with the ALJ's RFC determination, and that the ALJ properly rejected those portions that were inconsistent with the ALJ's findings.   [*Doc. 20* at 6-8].   Defendant cites to medical evidence in the record that supports the ALJ's RFC findings.   *Id.* at 8-9.

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."   *Krauser v.*

*Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).   First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."   *Pisciotta*, 500 F.3d at 1077 (citations omitted).   If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight."   If, however, "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."   *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.   *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).   Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

Here, the ALJ does not refer at all to Dr. Cambron's April 15 or May 13, 2011 opinions in her decision.   The Court agrees with Defendant that Dr. Cambron's statements that the combination of Plaintiff's palpitations and musculoskeletal pain made employment "somewhat impractical" (*Doc. 11-16* at 23 and 25) are not medical opinions under §§ 404.1527(a)(2) and 416.927(a)(2).   *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (holding that a doctor's statement that he felt that the claimant would never return to work because he had a stroke, "was not a true medical opinion" because "[i]t did not contain [the doctor's] judgment about the nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform," and that "[i]t merely stated that the doctor did not know if [the claimant] would be able to return to work, which is an issue reserved to the Commissioner").   However, Dr. Cambron's medical opinions in these documents, such as that non-narcotic medications have been insufficient to control Plaintiff's pain (*Doc. 11-16* at 23, 25), should have been considered by the ALJ pursuant to the holding in *Krauser* and *Pisciotta*.   The Court finds that the ALJ's failure to state what weight she gave these opinions was in error.

With regard to Dr. Cambron's May 12, 2011 assessment, the ALJ provides a recitation of Dr. Cambron's findings from this assessment, and then states that she "give[s] some weight to Dr. Cambron's opinion concerning the claimant's ability to lift and carry, need to sit and stand, postural limitations, and need to avoid hazards," but that, "taken as a whole [she] find[s] Dr. Cambron's opinion is not fully supported by the medical notes and progress reports." [*Doc. 11-3* at 20] (citing *Doc. 11-16* at 27-29).   The ALJ does not discuss Dr. Cambron's opinions in his May 12, 2011 assessment regarding Plaintiff's need to alternate positions at will or her need

to be absent from work about twice a month (*Doc. 11-16* at 27-29), and these opinions are not

taken into account in the ALJ's RFC determination (*see Doc. 11-3* at 19).   The ALJ's failure to

state whether she found that these opinions are well supported by medically acceptable clinical and

laboratory diagnostic techniques, and whether they are consistent with the other substantial

evidence in the record, is in error.   Defendant's attempt to supply the ALJ's reasoning for failing

to discuss these opinions is an impermissible *post hoc* rationalization, as discussed *supra*.   *See*

*Robinson*, 366 F.3d at 1084.   In addition, the ALJ's failure to state what weight she gave to these

opinions is also in error.   For these reasons, the Court finds that the ALJ erred in failing to address

all of Dr. Cambron's opinions and in failing to state specifically the weight given to these

opinions.   Therefore, upon remand, the ALJ shall consider all of Dr. Cambron's medical opinions

in compliance with the legal requirements of *Krauser*, 638 F.3d at 1330, *Pisciotta*, 500 F.3d

at 1077, and 20 C.F.R. §§ 404.1527(c), 416.927(c).

### 3.   The ALJ's Assessment of Dr. Brady's Opinion

Plaintiff next contends that the ALJ erred in her RFC determination by giving the opinion

of a state-agency doctor, Dr. Eileen Brady, more weight than she gave to Plaintiff's treating or

examining doctors.   [*Doc. 19* at 14-15].   Plaintiff contends that Dr. Brady's opinion was based

on an incomplete record because it was made without records from the New Mexico Heart

Institute, which showed that Plaintiff had a diminished exercise capacity.   *Id.* at 15 (citing *Doc.*

*11-11* at 65-72).   Defendant, however, contends that the ALJ did not err in giving Dr. Brady's

opinion considerable weight.   [*Doc. 20* at 9-10].   Defendant states that, even though a stress

echocardiogram from the New Mexico Heart Institute showed "marked hypertensive response

14

with exercise," other records "note continual improvement of Plaintiff's symptoms on exertion with better control of her hypertension."  *Id.* at 10 (citing *Doc. 11-17* at 4, 9, 12, 16, 21, and 33-35).

The ALJ gave "considerable weight" to Dr. Brady's opinion that Plaintiff is capable of a limited range of light work.  [*Doc. 11-3* at 21] (citing *Doc. 11-11* at 65-72).  The ALJ, however, failed to provide any support for giving this opinion considerable weight other than stating that Dr. Brady conducted a "comprehensive and well[-]reasoned review of the medical evidence available to that time."  [*Doc. 11-3* at 21].  "An ALJ is bound by the opinions of agency medical consultants only insofar as they are supported by evidence in the case record."  *Lee v. Barnhart*, No. 03-7025, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. Dec. 8, 2004) (unpublished) (citing Soc. Sec. R. 96-6p, 1996 WL 374180, at *2).  "If the ALJ relies heavily on such opinions, as the ALJ did here, the opinions must themselves find adequate support in the medical evidence." *Lee*, 117 Fed. Appx. at 678.  Dr. Brady's opinion does not consider the evidence from the New Mexico Heart Institute regarding Plaintiff's heart condition, because that evidence was submitted to the ALJ after Dr. Brady had prepared her opinion, and Dr. Brady's opinion conflicts with evidence regarding Plaintiff's diminished exercise capacity.  While Defendant attempts to supply the ALJ's reasoning for finding that Dr. Brady's opinion is not in conflict with this evidence by stating that the records note improvement of Plaintiff's exertion symptoms with better control of her hypertension, the ALJ provided no such explanation in her opinion, and the Defendant cannot provide a *post hoc* rationalization.  See *Robinson*, 366 F.3d at 1084.  The Court, therefore, finds that on remand the ALJ should provide a more detailed explanation for

15

attributing considerable weight to state agency opinions that are contradicted by evidence in the record, in compliance with Soc. Sec. R. 96-6p, 1996 WL 374180 at *2 and Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions.   If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

### B.   Plaintiff's Remaining Claims

Plaintiff also contends that: the ALJ made various other errors in her RFC determination, such as failure to assess Plaintiff's work-related abilities on a function-by-function basis, failure to account for symptoms and limitations related to Plaintiff's heart impairments, and failure to consider other impairments (*Doc. 19* at 15-16); the ALJ's hypothetical to the VE was improper based on the ALJ's flawed RFC, and the ALJ failed to consider VE testimony that was adverse to her position (*id.* at 16-17); and the ALJ's credibility assessment is unsupported by substantial evidence and legally erroneous (*id.* at 17-20).   Because the Court has found that this case should be remanded so that the Commissioner can further develop the record regarding Plaintiff's heart condition, Plaintiff's RFC may be amended on remand.   Accordingly, the Court finds that it is unnecessary to reach Plaintiff's remaining claims because they may be affected by the ALJ's findings on remand.   *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims

regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).   The Court directs the ALJ on remand to include all limitations that are supported by the record in the RFC determination, and, if a second hearing is held, in any hypothetical questions to the VE, and to consider any evidence that is properly before the agency.

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider Plaintiff's physical and mental limitations as set forth above.   The Commissioner is directed to consider on remand only the period from July 1, 2009 through July 31, 2012.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, ***Plaintiff's Motion to Reverse or Remand Administrative Agency Decision*** *(Doc. 18)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**